**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

STEPHEN EPPLEY,

        Plaintiff,

v.

SAFC BIOSCIENCES, INC.,
<u>Serve: Registered Agent</u>
Corporation Service Co.
2900 SW Wanamaker Dr., Ste. 204
Topeka, KS 6614

        Defendant.

Case No.   2:20-cv-2053

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Stephen Eppley ("Plaintiff"), by and through his attorneys, and alleges the following against Defendant SAFC Biosciences, Inc. ("Defendant"):

### NATURE OF THE CLAIM

1.    Plaintiff prays for legal relief alleging wrongful termination in violation of public policy.

2.    Plaintiff prays for compensatory and punitive damages.

### PARTIES

3.    Plaintiff is, and was at all times relevant to the allegations herein, a citizen and resident of the state of Missouri and the United States.

4.    At all times relevant herein, Plaintiff was employed by Defendant SAFC Biosciences, Inc.

5.    Defendant is a Delaware corporation with its principal place of business in Kansas and is therefore a citizen of Delaware and Kansas.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the claim because the matter in controversy exceeds, exclusive of interests and costs, the sum of $75,000.00 and by virtue of the diversity of citizenship between Plaintiff and Defendant pursuant to 28 U.S.C. § 1332(a)(1).

7.     This Court has jurisdiction over Defendant because its principal place of business is in the State of Kansas, it transacted business in the State of Kansas, and the tortious acts or omissions alleged in this Complaint were committed in whole, or in part, within the State of Kansas.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## FACTUAL ALLEGATIONS

9.     Plaintiff began his employment with Defendant, a biochemical manufacturer, in January 2013 and worked at Defendant's location in Lenexa, Kansas.

10.     Plaintiff worked as a maintenance technician for Defendant and worked with Doug Scheiderer ("Scheiderer"), a calibration technician for Defendant.

11.     Plaintiff and Scheiderer worked night shifts with overlapping hours.  While working their respective night shifts, Plaintiff and Scheiderer would work alone together from approximately 4 a.m. to 7 a.m.

12.     In approximately July 2013, Plaintiff and Scheiderer got into an argument which ended with Scheiderer threatening to "kick" Plaintiff's "ass across the street on Saturday at 7 a.m." As Scheiderer walked away from this exchange, he angrily punched a box causing packing peanuts to go everywhere.

13.     Plaintiff reported Scheiderer's conduct to Danny Chestnut ("Chestnut"), Plaintiff's supervisor, and also told Chestnut his concern that Scheiderer had a problem with alcohol due to his behavior and the smell of his breath.

14.     Plaintiff was then directed to meet with Jay Blunt ("Blunt"), Defendant's human resource director.   Blunt informed Plaintiff that the "rules" required either someone in management or two different people to verify whether Scheiderer had an alcohol problem.   As a result, no further action was taken to follow-up on Plaintiff's concern about Scheiderer's potential alcohol problem nor was action taken relating to Scheiderer's aggressive outbursts toward Plaintiff.

15.     On the morning of October 23, 2013, Plaintiff and Scheiderer were involved in another altercation.

16.     On or about October 31, 2013, Plaintiff received a written warning from Blunt regarding the October 23rd incident.

17.     As reflected in the October 31st written warning, Plaintiff voiced his concern that Scheiderer was creating a hostile work environment due to his conduct which involved swearing, obscene language, and threats of violence.

18.     The October 31st written warning informed Plaintiff that the company expected him to abide by their policies and procedures and "[f]urther failure to abide by our policies and procedures will result in further action up to and including termination of employment."

19.      Per Defendant's Corporate Business Conduct Policy, "[a]ny behavior that creates an intimidating, hostile or offensive working environment is strictly prohibited."

20.     The October 31st written warning did not state in what way Plaintiff violated "policy and procedures". The written warning merely stated that Plaintiff complained of Scheiderer's inappropriate behavior.

21.     Plaintiff asked Blunt if the written warning meant he could not come to Blunt anymore if he had issues with Scheiderer without fear of losing his job.  Blunt responded with only "I'm not going to tell you can't."

22.     Plaintiff understood the October 31st written warning as an instruction not to report any further behavior by Scheiderer even if such conduct was violent or belligerent.

23.     Despite the October 31st warning and discussion with Blunt, Scheiderer continued to push Plaintiff into doors if they were walking near each other, verbally harass Plaintiff, and "fake" punch at Plaintiff. This conduct persisted through the years and Plaintiff was forced to tolerate the conduct due to Defendant's failure to remedy the hostile and threatening environment created by Scheiderer.

24.     On or about September 19, 2018, while Plaintiff was performing a task at the direction of one of Defendant's engineers, Scheiderer walked up behind Plaintiff and said "you're too fucking stupid to work on that machine, I don't know what the fuck they think you're going to do to fix it."

25.     Scheiderer then walked within a few feet of Plaintiff and made an upper-punch motion towards Plaintiff's head and said "that's what I thought . . . you're a fucking little bitch!"

26.     After completing the task, Plaintiff immediately contacted his supervisor, Chestnut, and made him aware of what had just happened.

27.     On or about September 20, 2018, Plaintiff met with Sylvia Fernald ("Fernald"), a human resource representative, to discuss Plaintiff's issues with Scheiderer.

28.     During this meeting, Fernald asked Plaintiff if he knew of any other employees who were having issues with Scheiderer.

29.     Plaintiff informed Fernald that many other employees had issues with Scheiderer's aggressiveness and hostile attitude.

30.     Despite informing Fernald of Scheiderer's conduct and the fact that other employees had issues with Scheiderer's aggressive and hostile attitude, no disciplinary measures were taken with respect to Scheiderer.

31.     On or about December 14, 2018, Scheiderer slammed Plaintiff into a wall. Plaintiff did not report this incident to human resources because he believed further reporting would be futile and would endanger his employment with Defendant.

32.     On or about July 11, 2019, Plaintiff was walking through Defendant's warehouse when he noticed Scheiderer walking towards him.

33.     Plaintiff pulled out his phone in order to avoid eye contact with Scheiderer and to hopefully avoid any altercation with Scheiderer that could endanger Plaintiff or Plaintiff's employment status.  Plaintiff also walked outside of the designated walkway to physically avoid Scheiderer.

34.     As Plaintiff passed Scheiderer, Scheiderer thrust his shoulder into Plaintiff's shoulder.

35.     Plaintiff immediately informed Chestnut of the incident.   Chestnut hesitated to inform James Jumonville ("Jumonville"), Plaintiff's manager, about the

incident due to Plaintiff's last written warning indicating one more incident would result in Plaintiff's termination.

36.     After Chestnut reviewed camera footage of the incident, Chestnut informed Plaintiff that he did not see how Plaintiff could get in trouble for this as Scheiderer was clearly the instigator.

37.     Chestnut informed Jumonville of the incident approximately a week later and Jumonville shared the information with Blunt.

38.     When Blunt and Jumonville reviewed the footage, they kept rewinding the footage and finding things that Plaintiff should have done differently in handling Scheiderer and to avoid being attacked by Scheiderer.

39.     Plaintiff wrote a complaint and, believing Defendant's local human resource department would retaliate, he sent the statement to the corporate human resource department via the "Speak-Up Line", an internet portal provided to employees for anonymous reporting of internal issues.

40.     Plaintiff reported the July 11th incident to MilliporeSigma via the "Speak-Up Line" under the category "Violations of our principles in the workplace and Human Rights" with the subject header of "Hostile Work Environment."

41.     Plaintiff received a response from the "Speak-Up Line" on July 22, 2019, stating that Plaintiff's complaint had been received and that they "are looking into this matter and will come back to you as soon as possible."

42.     On July 23, 2019, Plaintiff's employment with Defendant was terminated by Engineer Brad Foster ("Foster").

43.     In explaining the decision to fire Plaintiff, Foster informed plaintiff that the "straw that broke the camel's back" was that they believed that Plaintiff did not "deviate" enough to avoid issues with Scheiderer.

44.     Based on information and belief, the reason given for Plaintiff's termination was pretextual, and the true reason for Plaintiff's termination was his reporting of the assault/battery and hostile work environment.

**<u>Count I</u>**
**Retaliatory Discharge/Wrongful Termination in Violation of**
**Public Policy-Whistleblowing**

45.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth herein.

46.     The K.S.A. § 21-5412(a), defining the crime of assault in Kansas, defines assault as the act of "knowingly placing another person in reasonable apprehension of immediate bodily harm.".

47.     The K.S.A. § 21-5413(a), defining the crime of battery in Kansas, defines battery as the act of "knowingly or recklessly causing bodily harm to another person; or knowingly causing physical contact with another person when done in a rude, insulting or angry manner."

48.     Plaintiff's acts of reporting potential criminal activity by a fellow employee to his employer were acts protected by the public policy of the State of Kansas, as reflected by the statutes cited herein.

49.     A reasonably prudent person would have concluded that Scheiderer was engaged in activities that violated rules, regulations, or the law pertaining to public health and safety and the general welfare.

50.     Prior to Plaintiff's discharge, his employer knew of his complaints regarding Scheiderer's alleged criminal conduct.

51.     Plaintiff's complaints were done in good faith based on concern regarding the wrongful activity reported.

52.     Plaintiff was terminated in retaliation for reporting his complaints regarding Scheiderer's alleged criminal conduct.

53.     Based on information and belief, the reason given for Plaintiff's termination was pretextual, and the true reason for Plaintiff's termination was his reporting of the assault/battery and hostile work environment.

54.     Plaintiff was terminated in violation of public policy.

55.     As a result of Defendant's conduct, Plaintiff sustained damages including lost wages, lost benefits, and emotional distress.

56.     The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and others from similar conduct.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant, and prays for compensatory and punitive damages, for prejudgment and post-judgment interest as provided by law, costs expended, and other relief as this Court deems just, proper and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all issues pursuant to FRCP Rule 38.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

Respectfully submitted,

HOLMAN SCHIAVONE, LLC

By: */s/Brandon L. Corl*
    Anne Schiavone, KS Bar# 19669
    Brandon Corl, KS Bar #23043
    4600 Madison Avenue, Suite 810
    Kansas City, Missouri 64112
    Telephone: 816.283.8738
    Facsimile: 816.283.8739
    aschiavone@hslawllc.com
    bcorl@hslawllc.com
    ATTORNEYS FOR PLAINTIFF