**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

STEPHEN EPPLEY, )
)
Plaintiff, )
)
v. ) Case No. 2:20-cv-02053-JWB-ADM
)
SAFC BIOSCIENCES, INC., )
)
Defendant. )

**PLAINTIFF'S MOTION FOR LEAVE OF COURT TO CONDUCT DEPOSITIONS AFTER THE CLOSE OF DISCOVERY WITH MEMORANDUM IN SUPPORT**

COMES NOW plaintiff, and for his Motion for Leave of Court to Conduct Depositions After the Close of Discovery with Memorandum in Support, states as follows:

**CASE AND DISCOVERY HISTORY**

In this case, plaintiff is making a claim for retaliatory discharge/wrongful termination in violation of Kansas public policy; that is, his employment was terminated by defendant SAFC Biosciences, Inc. ("SAFC") in retaliation for his good faith report of an assault and battery committed by a former SAFC co-employee of Plaintiff named Doug Scheiderer. (*See* Doc. 1).

On May 5, 2020, a Scheduling Order was entered setting a deadline for all discovery to be completed by November 5, 2020. (Doc. 12). On May 19, following the parties' conferring, a proposed Stipulated Protective Order was provided to the Court.[1] The Court subsequently entered a Protective Order on May 21. (Doc. 14). On June 4, counsel for plaintiff ("PC") emailed plaintiff's good-faith settlement proposal to defendant. On June 29, counsel for defendant ("DC") emailed defendant's counteroffer to PC. The parties subsequently conferred and agreed to schedule a September 1 mediation with mediator Joe Eischens.[2] On July 8, Plaintiff served his First

[1] *See* May 19, 2020 Email from Brittney Herron to KSD_Mitchell_Chambers@ksd.uscourts.gov.
[2] *See* Doc. 16, July 7, 2020, Joint Notice Regarding Mediation.

Interrogatories and Requests for Production to Defendant (*See* Doc. 17). On July 21, Defendant served its First Set of Interrogatories and First Requests for Production to Plaintiff. (*See* Doc. 18). The parties subsequently each agreed to allow the other extensions of time to answer/respond/object to the other side's first discovery. On August 31, Defendant served its Answers and Objections to Plaintiff's First Interrogatories (*See* Doc 19). The parties subsequently engaged in an unsuccessful mediation on September 1 (*See* Doc 20).

On September 14, PC emailed DC identifying nine potential witnesses[3] and inquiring as to whether defendant would be able to produce these witnesses for deposition, so as to avoid the necessity of subpoenas.[4] On September 15, DC emailed in response to this email, but did not directly address the request regarding depositions.[5] On September 23, DC advised that: "[m]y understanding is that the only person who no longer works for us is Jesse Harding. I believe I would, therefore, be able to produce the rest of the folks" and asked for dates to depose Plaintiff in October.[6] PC responded on September 24 asking about the week of October 19 as a potential week to set aside a few days to do depositions.[7] DC responded that that week would be bad for him, and suggested the following week as a possibility for depositions.[8] PC subsequently emailed on September 24 noting that the week of October 26 should work.[9] On the next day, the parties served the remaining outstanding answers/responses/objections to each side's opening discovery along with supplemental rule 26 disclosures.[10] On the following Monday, DC emailed PC to provide information on the method by which emails were collected by defendant in order to

[3] Each of these witnesses was identified in Plaintiff's Initial Rule 26 Disclosures. *See* May 1, 2020 email from Corl to KSD_Mitchell_Chambers@ksd.uscourts.gov enclosing the parties' Initial Rule 26 Disclosures.
[4] *See* Exhibit 1, 9/14/2020 Corl Email
[5] *See* Exhibit 2, 9/15/2020 Ketchum Email
[6] *See* Exhibit 3, 9/14/2020-9/24/2020 Emails between Corl and Ketchum/Herron, pp. 4-5.
[7] *See* Exhibit 3, pp. 3-4.
[8] *See* Exhibit 3, p. 3.
[9] *See* Exhibit 3, pp. 2-3.
[10] *See* Docket Entries 21-23

respond to plaintiff's first requests for production of documents.[11] On September 28, PC advised DC of plaintiff's concerns regarding the inadequacy of this method, and inquired further regarding the possibility of the searching of emails using certain custodians and terms.[12] On September 30, DC emailed to request plaintiff's proposed search terms, to which PC responded on Monday, October 5 with a list of potential search terms/custodians.[13] On October 6, plaintiff served his Second Interrogatories and Requests for Production to Defendant.[14] On that same day, PC emailed DC to inquire about a potential call regarding case issues, including when the parties may be able to schedule depositions.[15]

On October 12, PC emailed DC to follow up and inquire about any updates on the discovery/search terms; DC replied the following day to advise, "[r]egarding search terms, we are running searches back to 1/1/13. We will likely be objecting to the new requests seeking documents that predate Mr. Eppley's employment with SAFC."[16] On this same day, defendant filed its deposition notice for plaintiff for October 27 (Doc. 25). On October 15, PC emailed the Court's Courtroom Deputy to inquire about the Court's procedure regarding one or both parties potentially requesting an extension of the discovery deadline; the Courtroom Deputy responded that same day regarding the Court's preference.[17] On Monday, October 19, PC emailed DC with the proposed text of an email to the Court regarding a request for an extension of time, and also inquired about how long it might take for defendant to produce additional documents with respect to the searches that they had discussed.[18] On October 21, PC followed up on this email to confirm

---

[11] *See* Exhibit 4, 9/25/2020-10/5/2020 Emails between Corl/Ketchum/Herron/Schiavone/Welther, p. 7 (with link redacted).
[12] *See* Exhibit 4, p. 6.
[13] *See* Exhibit 4, pp. 2-5.
[14] *See* Doc. 24.
[15] *See* Exhibit 5, 10/6/2020-10/13/2020 Emails between Corl and Ketchum, pp. 2-3.
[16] See Exhibit 5, pp. 2-3.
[17] See Exhibit 6, 10/15/2020 Emails between Corl and Court
[18] See Exhibit 7, 10/19/2020 and 10/21/2020 Emails from Corl to Ketchum/Herron, pp. 2-3.

it was acceptable to Defendant, with slightly changed language.[19] Following a phone conversation between counsel of that same day, PC submitted an email to the Courtroom Deputy regarding the parties' request for a 45-day extension of the discovery deadline.[20] Around this time, DC advised PC that defendant likely no longer intended to go forward with plaintiff's deposition on October 27, 2020, due to an apparent scheduling issue involving SAFC. The postponement of plaintiff's deposition was confirmed via emails between counsel on October 23, 2020.[21]

On October 28, 2020, the Court held a discovery hearing at 10:00 a.m., during which the Court heard argument on and denied the joint oral motion for a 45-day extension of the discovery deadline and commensurate extensions of remaining deadlines and hearings. (*See* Doc. 32). Before noon on this same day, PC wrote to DC about rescheduling the deposition of plaintiff and setting the deposition of eight of the previously-emailed-about nine defendant-employee witnesses.[22] Based on these emails and verbal communication between counsel, in order to accommodate defendant, counsel agreed to the following parameters (assuming availability for the witnesses could be confirmed)[23]:

- Deposition of Stephen Eppley on 11/2;
- Depositions of (1) James Jumonville; (2) Jay Blunt; (3) Sylvia Fernald; (4) Danny Chesnut to occur on 11/4-11/6;
- Depositions of (1) Christopher Gomez, (2) Thaddeus Hart, (3) Taylor Ortiz, and (4) Brad Foster to be taken by 12/9

On October 28, PC specifically inquired, "[k]nowing that you still need to confirm dates, are we good with setting the first four SAFC employees I identified below next week and the other four sometime before 12/9?" – to which DC responded, "**I'm fine with that, but I'm trying to reach**

[19] *See* Exhibit 7, p. 2.
[20] See Exhibit 8, 10/21/2020 Corl email, p. 2.
[21] See Exhibit 9, 10/23/2020 Emails between Corl and Ketchum, p. 2.
[22] *See* Exhibit 10, 10/28/2020 Emails between Corl/Ketchum, p. 6.
[23] *See* Exhibit 10, pp. 2-6.

**all of them first to make sure they are available**" (after also previously stating, "I'll start working on scheduling the others now").[24]

On October 30, 2020, DC served a supplemental document production, which plaintiff understood to be a supplement to its response to plaintiff's First Requests for Production.[25] On November 2, 2020, plaintiff was deposed. (*See* Doc. 34). To date, plaintiff has deposed four current employees of SAFC: (1) Jay Blunt, on 11/5/2020 (*See* Doc. 38), (2) James Jumonville, on 11/6/2020 (*See* Doc. 40), (3) Sylvia Fernald, on 11/6/2020 (*See* Doc. 39), (4) Danny Chesnut, on 11/11/2020 (*See* Doc. 42). As the Court is aware, in the parties' proposed Pretrial Order submitted on November 12, 2020, defendant disclaimed that an "agreement" existed with respect to the four additional depositions, but noted that "the parties will continue to discuss" the issue.[26] On November 13, 2020, PC emailed DC to provide 14 potential available dates for deposition of Gomez, Hart, Ortiz, and Foster between November 19 and December 9, to be done over two days.[27]

**WITNESSES**

With this Motion, Plaintiff is requesting the Court grant leave to depose four witnesses -- (1) Brad Foster; (2) Taylor Ortiz; (3) Christopher Gomez; and (4) Thaddeus Hart -- within 14 days of the Court's Order on this Motion. Plaintiff's allegations in the instant case arise out of a physical interaction between plaintiff and Scheiderer that occurred on or about July 11, 2019. According to discovery in this case, surveillance video at SAFC's location recorded the subject interaction between the two. This video was watched by at least five SAFC employees; one of those employees was Brad Foster.[28] However, by defendant's own admission, defendant does not

[24] *See* Exhibit 10, pp. 2-3 (emphasis added).
[25] *See* Exhibit 11, 10/30/2020 Emails between Corl, Ketchum, and Herron (with link redacted on page 7)
[26] *See* 11/12/2020 Herron Email to KSD_Mitchell_Chambers@ksd.uscourts.gov and attachment thereto
[27] *See* Exhibit 14, 11/13/2020 Email from Corl to Ketchum and Herron, p. 2.
[28] *See* Exhibit 12, SAFC'S Answers and Objections to Plaintiff's Second Set of Interrogatories, Number 3

currently possess a copy of any such video.[29] In light of this, the recollection of those who watched the video is particularly significant. Foster also apparently viewed another video of an interaction between plaintiff and Scheiderer from December 14, 2018 – a copy of which Defendant apparently also no longer possesses.[30] In that vein, there was a history of several previous incidents involving Scheiderer about which plaintiff made good faith complaints that were not appropriately handled or investigated by SAFC. Further, Mr. Foster was an employee present at the meeting during which plaintiff's employment was terminated by defendant (See Doc. 1, ¶¶ 42-43).

Ms. Ortiz is an SAFC employee whose employment coincided with plaintiff's and Scheiderer's. Ms. Ortiz is believed to have had previous negative interaction(s) with Scheiderer during his time with Defendant.[31] Similarly, Mr. Hart is an SAFC employee. Plaintiff previously provided to defendant a copy of electronic communications between Hart and plaintiff on September 25, 2020.[32] Consistent with these communications, it is believed by plaintiff that Hart will have relevant information relating to Scheiderer and Eppley, along with SAFC's handling and investigation of allegations of harassment by Scheiderer during his time with Defendant. Finally, Mr. Gomez is an SAFC employee who is believed to have relevant information relating to Scheiderer's workplace behavior, particularly an incident involving another now-former employee named Jesse Harding. With respect to Ortiz, Hart, and Gomez, plaintiff believes that their potential testimony is highly relevant to plaintiff's claims, in that defendant was very much aware of significant issues involving Scheiderer -- particularly in light of defendant's apparent conclusion that both Eppley and Scheiderer shared responsibility and fault for various incidents between the two, culminating in the final incident after which plaintiff's employment was terminated.

---

[29] *See* Exhibit 13, Defendant's Responses and Objections to Plaintiff's First Requests for Production, Number 19.
[30] *See* Exhibit 13, Defendant's Responses and Objections to Plaintiff's First Requests for Production, Number 19.
[31] *See* Exhibit 15, which Plaintiff will seek leave to file under seal.
[32] *See* Exhibit 16.

## ARGUMENT AND AUTHORITIES

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "To establish good cause, the moving party must show that it could not have met the deadline despite 'diligent efforts.'"[33] In this Court, it has been held that "[t]he party seeking to extend a scheduling order deadline must establish good cause by proving the deadline could not have been met with due diligence. The party is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[34] In considering Rule 16(b), Judge Crabtree noted in *Ledbetter* that "[i]n ordinary language, a deadline extension requires the movant to provide 'an adequate explanation for any delay.'" *Id.*

Pursuant to the Scheduling Order in this case,

> g. **To encourage cooperation, efficiency, and economy in discovery, and also to limit discovery disputes, the court adopts as its order the following procedures agreed to by parties and counsel in this case**:
>
>> . . . **Depositions will be scheduled by agreement of counsel, rather than filing a Notice without conferring on opposing counsel's availability.** However, should the parties be unable to come to such an agreement on deposition scheduling after reasonable attempts at conferring, each party reserves the right to bring the matter to the Court's attention for resolution.

Doc. 12, p. 6 (emphasis added). Further, as the Court also noted in the Scheduling Order, it has formally adopted the KBA's *Pillars of Professionalism*[35] as aspirational goals to guide lawyers in their pursuit of civility, professionalism, and service to the public, and the Order states that counsel

---

[33] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 5057482, at *12 (D. Kan. Sept. 2, 2020) (quoting *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018)).

[34] *Ledbetter v. Int'l Ass'n of Machinists & Aerospace Workers,* Case No. 18-2546-DDC-GEB, Doc. 45 (D.Kan. July 29, 2020) (a copy of this case is attached hereto as Exhibit 17) -- **of note, Judge Crabtree subsequently denied a Motion for Review of this July 29, 2020 Order** in *Ledbetter v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 18-2546-DDC-GEB, 2020 WL 5704123 (D. Kan. Sept. 24, 2020).

[35] http://ksd.uscourts.gov/wp-content/uploads/2018/01/2-15-13-Pillars-of-Professionalism.pdf (last visited November 24, 2020).

should conduct themselves accordingly when litigating cases in this court. *Id.* at p. 10.[36] Of particular relevance to the instant motion, these *Pillars* note, with respect to opposing parties and counsel (on page 8):

> "3. Grant scheduling and other procedural courtesies that are reasonably requested whenever possible without prejudicing your client's interests"; and

> "5. Be willing and available to cooperate with opposing parties and counsel in order to attempt to settle disputes without the necessity of judicial involvement whenever possible."

It should be apparent from this motion that counsel have generally worked well together in handling discovery in this case by mutual agreement and without involvement of the Court prior to the pretrial conference, excluding the parties' previous request to extend the discovery deadline that was denied by the Court on October 28. And immediately following the Court's denial of this motion, PC attempted to work with DC to not only schedule depositions of these eight defense-controlled witnesses at agreeable times, *but also willingly worked to reschedule plaintiff's deposition, which had been unilaterally postponed from the day before the October 28 conference due to an apparent conflict on the part of defendant*. It should be clear to the Court that, upon receipt of plaintiff's initial document production relating to its requests for production to defendant and DC's clarification regarding the scope of defendant's search, plaintiff worked and followed up diligently to ensure plaintiff received all responsive documents and to continue to confer regarding depositions. And, further, the first of such additional document production did not occur until October 30, 2020.

---

[36] *See also,* The Court's "GUIDELINES FOR CASES INVOLVING ELECTRONICALLY STORED INFORMATION" – "An attorney's representation of a client is improved by conducting discovery in a cooperative manner. The failure of counsel or the parties in litigation to cooperate in facilitating and reasonably limiting discovery requests and responses increases litigation costs and contributes to the risk of sanctions" http://ksd.uscourts.gov/wp-content/uploads/2015/10/Guidelines-for-cases-involving-ESI-July-18-2013.pdf (last visited November 24, 2020); FED.R.CIV.P. 1: "These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

During the time between defendant's initial document production (relating to the first requests for production) and the initial supplemental production thereto, PC again inquired about the scheduling of depositions – but without certainty as to the time when the supplemental searching and document production would occur. Plaintiff did not believe it would be feasible to schedule depositions of defendant's employees with an uncertain date of a future document production (to supplement a previous production), particularly to the extent such document production could affect plaintiff's need or wish to depose certain witnesses. Further, based on the generally collegial manner in which counsel had previously worked in resolving issues and litigating the case to date, plaintiff relied upon DC's representation that defendant would be willing to produce all eight witnesses, with four of those witnesses to be produced by December 9, one week after the Court's dispositive motion deadline. It appeared clear to plaintiff that defendant would work to get available dates for the witnesses and, based upon the language in the Scheduling Order, plaintiff was not to file notices of deposition without an agreement of counsel. The alternative to this, pursuant to the Court's Order, was to seek Court intervention in a situation where the parties "unable to come to such an agreement on deposition scheduling." In a situation like this, plaintiff believed it unreasonable to involve the Court in light of the fact that counsel had agreed, in writing, to this arrangement. Additionally, while PC was advised by DC that there may be some subsequent trepidation on behalf of defendant about the scheduling and taking of the last four depositions after the initial agreement, it was not until a final draft of the proposed Pretrial Order was circulated that it was clear that defendant was going to firmly assert that plaintiff was not entitled to take these depositions.[37]

[37] *See* 11/12/2020 Herron Email to KSD_Mitchell_Chambers@ksd.uscourts.gov and attachment thereto.

It is difficult to ascertain how defendant would be in any way prejudiced by the Court allowing these four depositions to proceed. Plaintiff identified them in his Initial Rule 26 Disclosures and PC advised DC of plaintiff's wish to depose them within the discovery period. These witnesses are all apparently employed by defendant. They are all apparently within defendant's control for purposes of production for deposition. They are all apparently available to speak with DC outside of a deposition, or even to potentially provide documents or information to assist defendant in preparing its motion for summary judgment. Plaintiff does not have this luxury. Additionally, plaintiff detrimentally relied on DC's representations in not only waiting to schedule these depositions until dates after the close of discovery, but also in agreeing to reschedule his own deposition on short notice (notably, within the discovery window and without involving the Court). Plaintiff cannot speak directly to defendant's motivations for taking the position it is taking in this dispute. Perhaps there was a miscommunication between DC and defendant. Perhaps defendant saw a procedural opening and tried to take advantage of plaintiff's detrimental reliance to keep its own witnesses' potentially harmful testimony from seeing the light of day in a pre-trial deposition (and before a presumed motion for summary judgment is considered). Whatever its motivations, at a minimum, the actions taken by defendant here are antithetical to the *Pillars of Professionalism* adopted by this Court and contradict the tenets of Rule 1, and defendant should not be rewarded therefor. Plaintiff acted diligently in attempting to obtain responsive documents and schedule these depositions by agreement, but was thwarted by defendant's attempted eleventh-hour rescission of a written agreement between counsel.

For these reasons, Plaintiff requests this Court grant his motion and grant leave to amend the scheduling order to conduct these four depositions within 14 days of the Court's Order, and for other such relief as the Court deems just and appropriate.

By: */s/ Brandon L. Corl*
Anne Schiavone, KS Bar# 19669
Brandon Corl, KS Bar #23043
HOLMAN SCHIAVONE, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
aschiavone@hslawllc.com
bcorl@hslawllc.com
ATTORNEYS FOR PLAINTIFF