IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHEN EPPLEY,

    Plaintiff,

    v.

SAFC BIOSCIENCES, INC., *a Delaware Corporation*,

    Defendant.

Case No. 20-2053-TC-ADM

## **MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiff's Motion for Leave of Court to Conduct Depositions After the Close of Discovery. (ECF 48.) Plaintiff Stephen Eppley seeks to take the depositions of four employees of Defendant SAFC Biosciences, Inc. ("SAFC") after the November 5 discovery deadline. SAFC opposes the motion. Eppley argues that he and SAFC agreed to take the depositions beyond the discovery deadline and that he was diligent in pursing these depositions. The court disagrees. Eppley relies on emails between counsel that reflect deposition scheduling discussions but do not establish that SAFC itself ever agreed to produce these witnesses for depositions beyond the discovery deadline. Eppley also has not shown that he could not have taken these depositions before the close of discovery if he had acted with diligence, and therefore he cannot demonstrate good cause to take the depositions beyond the discovery deadline. For these reasons, as explained below, the court denies Eppley's motion.

**I.    BACKGROUND**

Eppley alleges that SAFC terminated his employment as a result of his good-faith reporting that a coworker assaulted and battered him. He asserts one claim of retaliatory and

wrongful discharge for whistleblowing in violation of Kansas law. (ECF 50, at 6.) On May 5, 2020, the court convened a scheduling conference and entered a scheduling order that set a discovery deadline of November 5.

The docket sheet reveals no discovery activity in the months of May and June. It was not until July 8, that Eppley served his first set of interrogatories and requests for production ("RFPs") on SAFC. (ECF 17.) SAFC did not serve its interrogatory responses until August 31, which was the day before the parties mediated this case. (ECF 19.) Mediation was unsuccessful. (ECF 20.) On September 25, SAFC served responses and objections to Eppley's first set of RFPs. (ECF 21.) On October 6, Eppley served his second set of interrogatories and RFPs. (ECF 24.) On October 22, the parties requested a discovery conference with the court to discuss an extension of the discovery deadline and other remaining case-management deadlines.

On October 28, the court convened a discovery conference to discuss their requested extension. At that time, the parties requested a 45-day extension of the discovery deadline. (ECF 31.) Eppley explained that the parties hoped mediation would resolve the case but, because it did not, the parties were in the process of completing document discovery before beginning depositions. SAFC echoed this sentiment, stating that the parties had hoped that the case would resolve at mediation. SAFC further added that COVID had played a role in the delays but did not elaborate on how so. The court denied the motion. (ECF 32.) The court found that the parties had not shown good cause to amend the scheduling order because they had not shown that the scheduling order deadlines could not have been met with diligence. The court relied on the lack of any significant discovery during the four months leading up to mediation and the lengthy discovery period provided from the outset. More specifically, the court stated that, under normal circumstances, this relatively straightforward case would have required a

four-month discovery period but that the six-month period provided already accounted for potential COIVD-related delays. Although the court denied the motion, it reminded the parties they were free to stipulate to conducting discovery beyond the discovery period so long as it did not interfere with court-imposed deadlines.[1]

The same day the court denied the parties' motion, the parties exchanged emails about scheduling depositions. In one exchange, Eppley's counsel asked whether he could depose certain individuals the following week and then asked if the parties could "agree to take the depositions of the others (Christopher Gomez, Thaddeus Hart, Taylor Ortiz, and Brad Foster), who defendant would agree to produce, at some point before December 9 (a week after the MSJ deadline). Let me know if this is agreeable to you." (ECF 48-10, at 4.) Defense counsel responded that he would "start working on scheduling the others now." (*Id.* at 3.) Eppley's counsel then stated, "Knowing that you still need to confirm dates, are we good with setting the first four SAFC employees I identified below next week and the other four sometime before 12/9?" (*Id.* at 2.) Defense counsel responded, "I am fine with that, but I'm trying to reach all of them first to make sure they are available." (*Id.*) Based on this exchange, Eppley believed the parties reached agreement that he could take the depositions of Gomez, Hart, Ortiz, and Foster after the discovery deadline.

The parties raised the issue of the four remaining depositions of Gomez, Hart, Ortiz, and Foster during the final pretrial conference on November 18. Eppley argued the parties had stipulated to the depositions outside of the deadline, but SAFC stated that they never had an agreement and that SAFC was done producing deponents. The court directed the parties to brief the motion now before the court. Eppley now asks the court to amend the scheduling order to

---

[1] Neither party sought reconsideration of that order.

allow him to depose SAFC employees Gomez, Hart, Ortiz, and Foster after the discovery deadline.  Eppley's initial disclosures served on May 1, listed all four of these witnesses.  (ECF 55-1.)

## II. EPPLEY HAS NOT SHOWN GOOD CAUSE TO EXTEND THE DISCOVERY DEADLINE TO ALLOW THESE BELATED DEPOSITIONS

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).  To establish "good cause," the party seeking to modify a deadline must show that it "could not have been met with diligence."  *Parker v. Cent. Kansas Med. Ctr.*, 178 F. Supp. 2d 1205, 1210 (D. Kan. 2001), *aff'd*, 57 F. App'x 401 (10th Cir. 2003); *see also* FED. R. CIV. P. 16(b)(4) advisory committee's note to the 1983 amendment (stating good cause exists when a schedule cannot be reasonably met despite the diligence of the party seeking the extension).  The court is "afforded broad discretion in managing the pretrial schedule." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011).

### A. The Parties Did Not Have a Rule 29 Agreement to Allow Eppley to Take These Depositions Beyond the Discovery Deadline.

Eppley relies primarily on his argument that good cause exists to modify the scheduling order deadline to allow these late depositions because, according to Eppley, SAFC's counsel agreed to the depositions after the discovery deadline. Federal Rule of Civil Procedure 29 allows the parties to stipulate to modify various procedures and timelines governing depositions and discovery so long as the stipulations do not interfere with the discovery deadline, hearings, or trial.  FED. R. CIV. P. 29.  Under this rule, the parties may stipulate to depositions occurring "at any time," including outside of the discovery deadline.  *See Hernandez v. Starbucks Coffee Co.*, No. 09-60073-CIV, 2011 WL 13173810, at *2–3 (S.D. Fla. Apr. 14, 2011) (finding a court order was not required for a Rule 29 stipulation to conduct depositions beyond the discovery deadline);

4

*Lyles v. County of Monterey*, No C 05-4042 JW (RS), 2007 WL 2023503 at *3 (N.D. Cal. July 12, 2007) (finding Rule 29(a) applies to depositions after the discovery deadline).

A Rule 29 stipulation is an "agreement made by the attorney engaged on opposite sides of a cause (especially if in writing), regulating any matter incidental to the proceedings or trial, which falls within their jurisdiction." *Ferring Pharm. Inc. v. Serenity Pharm., LLC*, 331 F.R.D. 75, 79 (S.D.N.Y. 2019) (quoting BLACK'S LAW DICTIONARY 1427 (Deluxe 7th ed. 1999)). For the parties to reach a Rule 29 stipulation, there must be a meeting of the minds. *Id.* The court has the authority to reject a Rule 29 stipulation that thwarts full disclosure or delays a case, and it also has the authority to enforce a Rule 29 stipulation. *See I/P Engine, Inc. v. AOL, Inc.*, 283 F.R.D. 322, 325 (E.D. Va. 2012) (discussing the court's authority to reject a Rule 29 stipulation); *see also U-Haul Co. of Nevada v. Gregory J. Kamer, Ltd.*, No. 2:12-CV-00231-KJD, 2013 WL 1249702, at *3 (D. Nev. Mar. 26, 2013) (enforcing a Rule 29 stipulation and noting that the parties were encouraged to use stipulations to resolve disputes and eliminate the need for motion practice), *aff'd,* No. 2:12-CV-00231-KJD, 2013 WL 4458812 (D. Nev. Aug. 15, 2013).

The email exchange that Eppley relies on does not establish a meeting of the minds sufficient to constitute a Rule 29 stipulation that SAFC would agree to produce the four deponents after the discovery deadline. To the contrary, the emails involve a routine back-and-forth between the attorneys about scheduling multiple depositions, including a possible timeframe for deposing the four SAFC employees at issue in this motion—in other words, scheduling matters. Their email exchange never specifically addressed the issue of whether or to what extent SAFC itself would stipulate to discovery occurring beyond the discovery period. The most relevant email exchange occurred on October 28, after the discovery conference where the court denied the parties' request for a wholesale 45-day extension of the discovery deadline.

5

Eppley's counsel asked, "Knowing that you still need to confirm dates, are we good with setting the first four SAFC employees I identified below next week **and the other four sometime before 12/9**?" (ECF 48-10, at 2 (emphasis added).)  To which defense counsel responded, "**I'm fine with that, but** I'm trying to reach all of them first to **make sure they are available**." (*Id.* (same)).  This illustrates nothing more than counsel's professional courtesy that defense counsel himself—"I," not "SAFC"—was fine with scheduling the four depositions at issue after the discovery deadline, but sometime before December 9.  Furthermore, defense counsel expressly qualified this by making it contingent on witness availability.  In other words, counsel was commenting on his own availability, not on whether his client was stipulating to produce these deponents beyond the discovery deadline.  In short, SAFC's counsel never represented that SAFC would agree to produce these four deponents beyond the discovery deadline.  *Cf. U-Haul*, No., 2013 WL 1249702, at *3 (enforcing a Rule 29 stipulation in excess of Rule 30 deposition limits where the written stipulation was signed by all counsel and listed the specific depositions, which were all noticed).  Because there is no Rule 29 stipulation, this is not a basis to find good cause to extend the discovery deadline to allow for the depositions.

The remainder of Eppley's arguments on this point go to his own impressions and do not show a Rule 29 agreement or any separate basis on which the court could find good cause.  Eppley focuses on the scheduling order's language encouraging the parties to schedule depositions by agreement and the scheduling order's citation to the *Pillars of Professionalism*,[2] which instruct courtesy in scheduling matters and cooperation in attempting to resolve disputes

---

[2] Eppley also argues that SAFC's actions are antithetical to the *Pillars of Professionalism* and contradict the tenants of Rule 1.  These criticisms are not well taken.  In the subject email exchange, defense counsel indicated his own personal willingness to schedule these depositions.  The fact that his client declined to agree to discovery beyond the discovery deadline is neither improper nor an indication that counsel did not demonstrate professional courtesy.

6

without judicial involvement. Eppley argues that, based on the scheduling order, he did not want to unilaterally notice depositions. These arguments are misplaced. This is not an issue of Eppley's hands being tied by the scheduling order or the *Pillars of Professionalism.* This is a problem of Eppley waiting until the last minute to complete what he characterizes as vital discovery from key individuals. Eppley had six months of regular discovery to take these depositions, but he did not do so. By October 28, when the undersigned denied the parties' motion for a 45-day extension of the discovery deadline, Eppley was under a self-inflicted time crunch. Apparently, he wanted to depose eight SAFC employees, and discovery was set to close on November 5. He had two options: (1) obtain a proper Rule 29 stipulation that SAFC would produce four of the deponents after the close of discovery, or (2) serve deposition notices to take these depositions before the close of discovery.[3] He did neither but instead argues that it was somehow SAFC's fault because Eppley did not learn until the pretrial conference that SAFC would not produce these deponents. But it was incumbent upon Eppley to timely obtain the stipulation he now seeks to rely on, not on SAFC to confirm that it would not stipulate to additional discovery. Because Eppley did not obtain a Rule 29 stipulation, the court does not find good cause based on Eppley's mistaken impressions.

### B. **Eppley Has Not Demonstrated That He Could Not Have Taken the Four Depositions Within the Discovery Period if He If He Had Acted With Diligence.**

Eppley also argues that good cause exists to allow the depositions beyond the discovery deadline because Eppley contends that he was diligent in attempting to schedule the depositions.

---

[3] Nothing in the scheduling order, this court's deposition guidelines, or the *Pillars of Professionalism* prohibits a party from serving a deposition notice before the close of discovery when counsel has made reasonable but unsuccessful efforts to schedule deposition dates with opposing counsel. *See, e.g.*, D. KAN. DEPO GUIDELINES ¶ 3 (requiring at least five calendar days' notice for a deposition).

By way of background, during the October 28 discovery conference, the court denied the parties' oral motion for a 45-day extension of the remaining case-management deadlines. In doing so, the court found that the parties had not shown good cause to amend the scheduling order because they did not show that the scheduling-order deadlines could not have been met with diligence. Eppley's motion provides no reason to depart from that conclusion with respect to these four depositions. In addition to relying on the language in the scheduling order about cooperating to schedule depositions and its citation to the *Pillars of Professionalism*, Eppley also focuses on his preference to complete document discovery prior to taking depositions, noting that SAFC produced additional documents on October 30. Eppley states that he inquired about scheduling depositions earlier but, without knowing the exact timing of SAFC's supplemental production, Eppley did not believe it was feasible to firm up dates. Essentially, the court understands Eppley's argument to be that document discovery held up scheduling depositions.

The court certainly understands that counsel would want to have pertinent documents reasonably in advance of a deposition. However, this argument only highlights that Eppley also was not diligent in obtaining document discovery. According to the docket sheet, Eppley allowed more than two months of discovery to lapse before serving his first set of interrogatories and RFPs. Even after SAFC's initial document production on September 25, it appears the parties took no meaningful action to schedule the depositions while awaiting SAFC's supplemental production. Moreover, as SAFC notes, the four individuals Eppley now seeks to depose were known to him from the outset. Eppley listed them in his Rule 26(a)(1) initial disclosures. Nothing prevented Eppley from at least scheduling the depositions and attempting to stage discovery within the timeframe provided. Instead, the parties took little action while awaiting mediation, and then they banked on an extension of scheduling-order deadlines that

8

never came. This does not establish good cause to modify the discovery deadline to allow for the depositions because Eppley has not shown that he could not have met the original discovery deadline despite diligent efforts.

### C. Eppley's Arguments Regarding Prejudice and Relevance are Misplaced.

Eppley also argues that SAFC would not be prejudiced by allowing the depositions, which are highly relevant. But the legal standard for good cause to amend a scheduling requires that the moving party show that the existing deadline could not have been met with diligence. In other words, it does not focus on the lack of prejudice to the opposing party or whether the discovery is relevant. Presumably, the proposed discovery usually is relevant. Even so, the court disagrees that the bulk of this discovery appears highly relevant, as Eppley suggests.

It is not readily apparent how the anticipated testimony of three of the four proposed deponents would bear on any elements of Eppley's retaliatory discharge claim or on SAFC's defenses. To state a claim for retaliatory discharge for whistleblowing under Kansas law, the plaintiff must allege facts sufficient to show the following: (1) a reasonable person would have concluded that the employer or a coworker "engaged in activities in violation of rules, regulations or the law pertaining to public health, safety, and the general welfare"; (2) the employer knew of the plaintiff's good-faith reporting of the violations; and (3) the employer terminated plaintiff's employment in retaliation for reporting the violations. *Goodman v. Wesley Med. Ctr., LLC*, 78 P.3d 817, 821 (Kan. 2003); *see also Palmer v. Brown*, 752 P.2d 685, 689 (Kan. 1988) (first recognizing the tort). The crux of Eppley's claim is that SAFC fired him in retaliation for his good-faith reporting of crimes—Scheiderer's alleged assault and battery. Eppley states that three of his proposed deponents (Ortiz, Hart, and Gomez) will testify about Scheiderer's past harassing or improper conduct in the workplace and SAFC's handling of those

9

complaints. According to Eppley, this information is highly relevant to show that SAFC was aware of significant issues involving Scheiderer and how it handled those issues. But these significant issues do not appear to be anything that Eppley himself reported. The fact that other individuals may have thought Sheiderer was a poor employee or that SAFC potentially bungled past investigations would not appear to bear on whether a reasonable person would believe that Sheiderer violated the law during the incidents at issue in this case; whether Eppley reported those particular violations in good faith; or whether SAFC fired Eppley because of it.

On the other hand, Foster's testimony might be relevant, albeit perhaps cumulative. Eppley explains that Foster viewed the surveillance videos and was present when SAFC terminated plaintiff's employment. But Eppley's argument regarding the relevance of Foster's testimony only illustrates Eppley's lack of diligence. If Foster's testimony were so crucial—particularly because SAFC no longer possesses the video footage—Eppley should have deposed him sooner. After all, Eppley listed all of these individuals in his initial disclosures and had six months to take their depositions. (ECF 55-1.) He did not do so, and discovery is now closed.

### III.   CONCLUSION

Eppley has not shown that SAFC entered into a Rule 29 stipulation to allow additional depositions beyond the discovery deadline, and he also has not shown good cause to modify the scheduling order to allow for the depositions beyond the discovery deadline. For these reasons, the court denies Eppley's motion. That said, SAFC stated during the final pretrial conference that the only one of these four individuals that it might call as a trial witness is Foster. If SAFC does intend to call Foster as a trial witness, it must allow Eppley to depose him at least 14 days before trial in order to streamline the presentation of evidence at trial. *See* FED. R. CIV. P. 1 (requiring the court to construe the Federal Rules to ensure the just, speedy, and inexpensive

determination of the action). If SAFC does not intend to call Foster as a trial witness, it does not need to produce him for a deposition.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave of Court to Conduct Depositions After the Close of Discovery (ECF 48) is denied.

**IT IS SO ORDERED.**

Dated December 15, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge

11